All right, I see both counsels, so Ms. Lamert, you may proceed. Thank you, Your Honor. May it please the Court, I'd like to state first off the imposition by the state of $11,190 in sanction on my client was not mere remediation and does not take her back to the status quo. It actually places her in a much worse financial condition than had she never applied for unemployment benefits to begin with, after she got let go from her full-time job at McDonald's that she'd held for decades. Instead of receiving some $6,100 of unemployment benefits, she's received the sanction of almost double that amount with ongoing penalties because she failed to report and get offsets for $2,800 in change of part-time earnings that she earned at the Y. The core notion of the excessive fines clause is that any fine imposed will not be grossly disproportionate. Proportion analysis requires looking not only on the conduct in question and the harm of the imposition of the fine. We are not here today to assert that Ms. Grashoff should not have been assessed the requirement of paying back the $2,800 in offsets that ought to have occurred because of her part-time earnings and some additional fine for that conduct. The overall penalty of over $11,000 imposed is at least in part punishment and is constitutionally excessive under the Eighth Amendment. The punitive nature of 131.1a, the trial court erred in parsing out the 1.1a forfeiture and deeming all of that purely remedial. It's clear from looking at it that it is at least in part punitive on an individual. It's a mandated forfeiture of all weekly benefits regardless of the amount of unreported income. As the Austin court noted, even where there is some remedial purpose, a civil sanction that cannot fairly be said to be solely serving a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes is punishment as we have come to understand the term. The state concedes that the sanctions imposed by 131.1a and b include deterrent factor. And deterrence, as the Kokesh court noted, is not a legitimate non-punitive governmental objective. You can also see this in the juxtaposition between 131d, which is the consequence for innocent overpayments, and 131.1a, the knowing violation. The penalty for non-knowing violation is simply repaying the amount mispaid. But for knowing violations, the disgorgement requires and mandates all weekly benefits paid being forfeited regardless of the level of misreporting, even if it's a dollar, and even if it might, quote, otherwise be payable in the statute. Similarly, the lack of a hardship waiver availability for 131.1a sanctions demonstrates and has a punitive aspect and has a punitive nature to it. It's focused solely on the conduct of the claimant. If the conduct is deemed to be knowing, then automatically it imposes a maximum forfeiture in 131.1a that mandates that all of the money be forfeited for each given affected workweek. Right, and the rationale for that, Ms. Leonard, is because the recipient was not eligible at all. Actually, the eligibility language... As a consequence of the knowing violation of the statute. Well, but that's just the interesting thing. The eligibility provisions in the statute, which are 22.414 and 22.415, don't render her ineligible. In fact, if you look at 24.415 subpart 4, it specifies that ineligibility only occurs when there is an earning of disposable income that is at least equal to or greater than the weekly benefit amount. And it doesn't define away eligibility. So your argument is that the agency misinterprets its own statutory scheme? Well, what I'm saying is that she was eligible for the benefits, some of the benefits that she received because she lost her job at the McDonald's. She was someone who was eligible. Well, this sounds like an argument about how to interpret the state statutory scheme, not a constitutional argument. Well, the importance of it is that there is a property interest in at least some of those of whether or not that portion of the statute is at any part punitive and meant to be a deterrence. And our argument is that it is. She had a property interest in that that was taken away from her. Well, just to clarify, is there a problem with the way the state is interpreting the statutory scheme that it renders ineligible anyone who knowingly fails to disclose earnings? I would argue that all it does is require forfeiture in the statute. It, in fact, uses that term forfeiture. And I would I would indicate that because there is a property interest here and courts have have recognized that. There can be funds that are both lawful resources and unlawful resources, right? And the problem that becomes that comes out of this is that when you require a full and complete disgorgement of all the weekly earnings, regardless of the level of offsets that ought to have occurred, you create a disproportionality issue as applied to my client in this case, because even if there's a dollar of reduction that ought to have occurred, you still get hit with the full sanction of full disgorgement of all your weekly benefits, even if you are otherwise eligible under the statute. Even if you're right about that, that I have a really hard time seeing how it's grossly disproportionate to just to to ask someone to return that which they're required to forfeit because of a knowing misrepresentation. How is that grossly disproportionate? Because it doesn't take into account her frankly her entitlement to some of the $6,100 of those benefits, and the fact that. Entitlement but for effectively a fraud, a knowing misrepresentation, and that we take that as the case comes to us, right? It's we're not reviewing the ALJ's finding. No, we're not, Your Honor. No, we're not, but the ALJ's finding was she failed to report the earnings because she thought that she didn't have to report part-time earnings. No, the ALJ's finding is a little more precise than that, right? It's the ALJ's found that it was a knowing failure to disclose. Knowing. Not just, oh yeah, you know, she just slipped her mind. She didn't realize a mistake. No, no, no. It was knowing. That's the finding. That's the way the case comes to us. And so in a circumstance where you have a knowing misrepresentation with respect to a benefit that you're otherwise eligible for, I'll grant you that. How is it grossly disproportionate for the state to say, no, you need to cough it all up? Because it's eligibility that the state can't just simply use a label and say suddenly you're not eligible for something as a way to bypass their obligations under the Eighth Amendment and their obligations to not impose a sanction that is grossly disproportionate to the offense. And we know what the harm is. That just begs the question. Why is it grossly disproportionate? Because it imposes a penalty on my client that puts her in a far worse financial position than she would have ever been in had she never even gone to the unemployment office. That always happens, though. That always happens. Imagine an insider trading case where it's routine. You disgorge the profits of the insider trading plus you get a fine, which is some multiple of the fine. Here, let's say she took approximately $3,000, which we all agree that she was not entitled to. Then just assume for the sake of argument that the additional $9,000 that she owes is punitive, is a fine. It's a multiplier of three of the amount of money that she was not entitled to. How is that grossly disproportional to the amount of money that she got that she wasn't entitled to? A multiplier of three, you're suggesting in this case or in all cases is grossly disproportional to the amount that she took that she was not entitled to. Thank you. I'm arguing in conjunction with this case, it's grossly disproportional because what we're dealing with here is a statute that is, at its core, designed to try and help people at a moment of economic anxiety and strife. The very purpose of the statute is being undermined, in essence, by the imposition of it's a maximum disgorgement in all cases. The state is setting a baseline rule, and that is, hey, look, let's all play fair with each other, tell the truth, and you'll get the benefit. Your client breached that condition. She did not tell the truth on the application. And so the state, doesn't the state have an interest in protecting the integrity of the terms and conditions on which the program is going to operate? They have an interest in it, but not all conduct is equally culpable or equally punishable. Well, that's why they have a 25%, 50%, and 100% statutory penalty scheme, right? Well, but that statutory penalty scheme only applies to second- and third-time offenders versus someone like my client, who's a first-time offender. You know, she hadn't applied for unemployment benefits for decades. So there's nothing in 1.1a that allows for any gradation of penalty associated with the failure to report. But the broader statutory scheme has different degrees calibrated, different degrees of forfeiture calibrated to the nature of the violation. And a non-knowing, negligent violation doesn't require a complete forfeiture. A knowing or fraudulent violation requires a complete forfeiture. So there is a calibration of the remedial components of this statutory scheme, separating out the 25% fine, which has its own graduated scheme. Well, but for knowing violations, there's no, again, there's different gradations of conduct of knowing violations. And here we know we can value what that is, what the harm is here. It's $2,800 that should not have been paid out, you know, but for the failure to report. And what we're saying is the Eighth Amendment requires that a proportionality should be adjusted to that amount. And the statutory scheme with 13.1.1a simply does not do that. Right, that has nothing to do with the degree of culpability. Well, but you can attach an additional fine under subpart B to address the culpability and the knowing violation, which is what's done. And the federal statute indicates that it should be no less than 15% of the amounts erroneously paid. And what we're saying is that the state should not be free to simply redefine what erroneously paid means and say, well, it's everything. If there's any, if there's any amount of knowing failure to report, everything becomes forfeitable. So your argument is basically that a knowing violation needs to be treated the same way as a negligent violation and only the incremental benefit forfeited. What we're arguing is that that 13.1.1a should be, should be proportioned to the amount of actual harm. So that it's the same as a negligent violation. Yeah, same as 13.1.1d, and then you can attach additional penalties under subpart B towards that conduct. But as it is, you're treating my client the same way as, say, an identity thief who comes in and has absolutely no entitlement to any benefit at any point in time and is taking 100% of benefits to which they never had any entitlement. All right. Thank you very much. Mr. Jones. May it please the court. Benjamin Jones for Commissioner Payne. Indiana can safeguard its public benefit programs, both by preconditioning receipt of benefits upon honest application and by recouping monies fraudulently paid to, without implicating the excessive fines clause. Now in the state's view, recovery of 100% of the fraudulently paid benefit is entirely remedial. And the 25% penalty is the only portion of the exaction that is subject to the excessive fines analysis. Nevertheless, I think as Judge Kirsch indicated earlier, even if the court accepts Ms. Grashoff's view that the entire exaction but for the marginal difference in benefits she would have otherwise been entitled to is a fine subject to the excessive fines analysis, that exaction is still not grossly disproportionate to the gravity of the offense. It's less than a three to one ratio between an $8,300 fine and a $2,800 fraud. And the touchstone here is, of course, grossly disproportionate to the gravity of the offense. And that single digit ratio certainly does not rise to the level of grossly disproportionate. That seems to me to be your stronger argument. But in fairness to the position that Ms. Leamer advances, why don't you address her first point? Because you don't have to change these facts very much to make this look punitive and therefore subject to the grossly disproportionate analysis. So suppose you have somebody that's receiving unemployment benefits while they're walking their neighbor's dog or picking up the neighbor's mail for five bucks a week. And they do the same thing here. They represent that they have no other income. And they do that knowingly, knowing that every week showing up in their mailbox is an unemployment benefits check. And they're required to forfeit 100% of that amount, net the five per week. That's remedial in your judgment? Absolutely, Your Honor. And the reason it's remedial is because Indiana can design its program such that any misrepresentation constitutes fraud. And then that misrepresentation disqualifies or forfeits. What's the line between remedial and punitive? How would you articulate it? Well, remedial, I'd articulate it like this. The remedial component of the exaction is the portion that is compensating the state for the harm it incurred. And here, when it pays out benefits on a fraudulent claim, Indiana law says there is no obligation to pay those benefits at all. Right. So you're defining it to be the state's just getting back that which it was not obligated  Absolutely, Your Honor. Don't we know from Austin that a return of a payment amount can be both remedial and punitive? Certainly. Give me an example of what the Supreme Court had in mind in Austin. Give me an example of a return of a payment that is both remedial and punitive. I think asset forfeiture or the discussion earlier of SEC disgorgement of funds that were improperly gained through insider trading or things of that nature, where there is both a remedial and punitive component to those forfeitures. But what I think distinguishes those from this case is we're actually talking about the public fisc. We're talking about funds that Indiana holds and trust that it's drawn from taxes on employers to pay out to vulnerable Hoosiers. So it's actually the state's money that it holds that is the subject of the fraud here. It's not an ambiguous public fraud or a... Right. And I think the reason your state legislature has set it up this way is to say, hey, look, you either tell the truth or you're going to have to return all of it. And that's going to stain, number one, which is the whole point. And number two, it's going to tell others, tell the truth. That sounds like it has a deterrent purpose, which seems very well maybe a matter of sound policy. And doesn't that make it punitive? It doesn't mean you lose the case. It just means you have to go the next step and ask the question whether it's grossly disproportionate. Absolutely. Your Honor, it does have a deterrent effect. We agree that and deterrence here is... By design. Absolutely. And deterrence is important in this context. It's important to deter fraud on public benefits programs, but both to safeguard the trust itself and to discourage, well, and to discourage fraud and to preserve the public's faith in the integrity of the program. But I think we know even from Bajikagian that in certain contexts, sanctions that have a deterrent effect can remain purely compensatory and remedial. The Bajikagian let stand the case law holding that customs duties and customs forfeitures of course have a deterrent effect. They deter smugglers from failing to report goods that they're bringing into the United States illegally. Nevertheless, those are wholly compensatory or wholly remedial because they are safeguarding the government's interest in customs duties and safeguarding the integrity of the border. And one point I do want to make is suppose for a moment that Indiana had caught this front end before it ever mailed the check out. And if it had simply disqualified Ms. Grashof at the outset and never sent the money and wasn't attempting to claw anything back, we wouldn't have an excessive fines analysis question there at all because Indiana would not be trying to claw back the money. And so simply because she has the state's money in her possession that she wasn't entitled to and we're clawing it back doesn't render it a punitive exaction. It's compensatory effort by the state. And in addition, and not only is it compensatory because we're recovering money that was fraudulently paid out and never should have been paid out, but there are intangible harms associated with the fraud on public benefits programs. And the state certainly has the ability to assign value to those intangible harms and secure those harms without making the exaction a punitive fine. And so in our view, those are the reasons why at least the $8,300 component of the benefits is wholly remittal. We have conceded for purposes of the day that the 25% penalty is of course in part punitive and subject to excessive fines analysis. But as I was saying in the beginning, even if the court disagrees with our view that the recovery of all the benefits is wholly remedial, the state still prevails because the three to one ratio is not unconstitutional. It's not grossly disproportionate under similar ratios have been approved by this court and other circuits around the United States that these sort of single digit ratios are not to the gravity of the offense that would implicate excessive fines. And the sanction in Baja Cajun that was struck down was orders of magnitude greater than that. We're talking 70 to one between the forfeiture and the maximum penalty that could have been imposed. But going further than that and actually considering the Baja Cajun analysis, what we know is that the essence of the offense here was 24 individual acts of fraud committed on a public benefits program and a knowing fraud to acquire benefits that Ms. Grashof was never entitled to. And that the fraud had the nature of damaging the public fisc and it was a fraud upon a government agency and that that carries heavy weight and it's a significant weight in the nature of the crime. We're not talking about a simple reporting failure like Baja Cajun where otherwise lawful activity becomes unlawful simply by failing to tell the federal government. Here it was a fraud to acquire public benefits. And so the essence of the crime certainly weighs in favor of this not being grossly disproportionate and it's important to know that Ms. Grashof's knowing failure to report income to receive public benefits is exactly the behavior that the General Assembly targeted with subsection 1.1. It was aimed at recovering benefits from those who submit fraudulent claims. And so unlike Baja Cajun who had an innocent explanation for what they were doing and fell afoul of a statute aimed at money launderers and drug smugglers, what we're talking about here is a statute that is targeted precisely at this behavior and is attempting to correct it. So that factor too weighs in favor of the state's exaction here. And Ms. Grashof has not been sanctioned with the maximum possible sentence as we highlight in her brief. Had she faced criminal penalties, she could have faced significant jail time of two to four years as well as a $10,000 or $12,000 fine depending on the nature of the criminal charges. And last, the nature of the harm justifies the exaction here because an $8,900 fraud on a public benefits program and Indiana as well within its rights to say that even a $5 misreporting forfeits the entire entitlement to that week's benefit is a significant harm upon the system because it harms the integrity of the FISC and the public perceptions of the program. And each of those weighs in favor of this not being grossly disproportionate. And the ratio, to repeat, the ratio that we are facing here has been consistently affirmed both by this court and Rogan. This court noted that a four to one ratio didn't seem to grossly disproportionate and certainly wouldn't be grossly excessive under due process analyses. And the D.C. Circuit in Bikundi or the Eighth Circuit in Aleph had similar conclusions of similar ratios. And so at base, even if the court disagrees with us on the remedial nature, the district court's judgment can be affirmed. But I understand Grashof's point to also be making an individual circumstances analysis that because it would be a hardship on her to pay this fine, she cannot, it's not a constitutional to apply it to us. But the court doesn't need to reach that question first because the Supreme Court certainly hasn't imposed an individual circumstances test. And second, the record shows she has more than a half million dollars in assets. And so an $8,900 or an $11,000 exaction does not rise to the level of gross disproportionality even upon consideration of her individual circumstances. And so if there are no further questions, we ask that this court's judgment be affirmed. All right. Thank you very much. Ms. Lehmert, rebuttal. Thank you. First off, in terms of the test, the badge of Cajun test, we contend that individual circumstances ought to be considered as part of that. We like the Tim's Supreme Court's, Indiana Supreme Court's decision, six-part analysis that they use, laying out, assessing the harshness of the punishment with the harshness of the conduct. And those six parts includes the effects the forfeiture will have on the claimant. And in this context, I think you have to take it at the time that the imposition is done, which is she's looking for her to resurrect her working life. Thank you. Thank you very much. Our thanks to both counsel. The case is taken under advisement.